IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DANIEL HARRIGAN**, by and through his guardians **CAROLE HARRIGAN** and **RANDY HARRIGAN**, <br><br>    Plaintiff, <br><br> v. <br><br> **MARION COUNTY**, et al., <br><br>    Defendants. | Case No. 6:11-cv-06174-SI <br><br><br> **OPINION AND ORDER** |

J. Ashlee Albies and Michael Rose, Creighton & Rose, P.C., 500 Yamhill Plaza Building, 815 S.W. Yamhill Plaza Building, Portland, OR 97204. Attorneys for Plaintiff.

Andrea D. Coit and Jeffery J. Matthews, Harrang Long Gary Rudnick P.C., 360 East 10th Avenue, Suite 300, Eugene, OR 97401. Attorneys for Defendants.

**Michael H. Simon, District Judge.**

  Daniel Harrigan ("Plaintiff"), by and through his guardians Carole Harrigan and Randy Harrigan, bring this action against Defendants Marion County and four of its deputy sheriffs, Jason Bernards, Stacy Rejaian (formerly Stacy Lucca), Jeffrey Stutrud, and T. Shane Burnham. Plaintiff alleges four claims for relief: (1) violation of the Fourth Amendment under 42 U.S.C. § 1983 (excessive force, by the individual Defendants); (2) violation of the Fourth Amendment

PAGE 1 – OPINION AND ORDER

under 42 U.S.C. § 1983 (failure to train and ratification of policies or practices exhibiting deliberate indifference to constitutional rights, by Marion County); (3) disability discrimination in violation of the Americans with Disabilities Act under 42 U.S.C §§ 12131-12165 (by Marion County); and (4) abuse of a vulnerable person under Or. Rev. Stat. § 124.100(2) (by Marion County).[1] A jury trial is scheduled to begin on September 30, 2013. This Opinion and Order addresses the parties' pending motions *in limine* and other evidentiary objections. Dkts. 53, 74, 79, 81, 82, 86, and 87.

## BACKGROUND

Plaintiff Daniel Harrigan is a 24-year-old man with Autism Spectrum Disorder. In 2010, he resided at MacLeay House in Salem, Oregon, an assisted-living facility for individuals with special needs. On September 21, 2010, Mr. Harrigan was in an agitated state, and a MacLeay House staff member was injured trying to calm Mr. Harrigan. Another staff member called 911, requesting assistance.

The members of the Marion County Sheriff's Department who responded to that 911 call included the four individual Defendants in this case: Deputy Jason Bernards, Deputy Stacy Rejaian (formerly, Stacy Lucca), Deputy Jeffrey Stutrud, and Sergeant Shane Burnham (collectively, the "Deputies"). When the Deputies arrived at the MacLeay House, along with emergency medical technicians ("EMTs"), MacLeay staff members allegedly told the Deputies about Mr. Harrigan's autism and that he would not be capable of responding to commands of law enforcement officers.

---

[1] Plaintiff previously alleged claims for common law battery and discrimination based on disability under 29 U.S.C. § 701 and Or. Rev. Stat. § 659A.142, but has withdrawn these claims. Dkts. 49 and 98.

PAGE 2 – OPINION AND ORDER

When the Deputies entered MacLeay House, Mr. Harrigan did not comply with their orders. Deputy Bernards fired three rounds from a beanbag shotgun, and Deputy Stutrud commanded and released a police dog, also known as a police K-9, all as part of the Deputies' efforts to take Mr. Harrigan into custody.

The Deputies allegedly tackled Mr. Harrigan, handcuffed him, and took him into custody. Because Mr. Harrigan suffered lacerations, allegedly from being bitten by the police dog, and contusions, allegedly from being hit by bean-bag bullets, the Deputies directed that Mr. Harrigan be taken to a nearby hospital to be treated for his injuries. While at the hospital, the Deputies, at some point in time, agreed to release Mr. Harrigan into the custody of his caregivers, and cited Mr. Harrigan for Assault IV (two counts) and Resisting Arrest (one count).

Mr. Harrigan alleges that as a result of the Defendants' actions, he suffered severe emotional distress and trauma and a violation of his constitutional rights under the Fourth Amendment to be free from an unreasonable search and seizure. He further alleges that Marion County's policies and practices regarding law enforcement officers caused Mr. Harrigan's injuries, and that reasonable officers in the position of the Deputies should have known that their conduct violated a clearly established right.

Plaintiff's first claim is brought only against Defendants Bernards, Rejaian (formerly, Lucca), Stutrud, and Burnham under 42 U.S.C. § 1983. Plaintiff alleges that these Defendants violated Plaintiff's rights under the Fourth Amendment by using excessive force against him. Plaintiff's second claim, also brought under 42 U.S.C. § 1983, is only against Defendant Marion County. Plaintiff alleges that Marion County's policies or customary practices resulted in the violation of his constitutional right not to have excessive force used against him. Plaintiff's third claim is brought only against Defendant Marion County. Plaintiff alleges that Marion County

failed to accommodate Plaintiff's disability and discriminated against him based on his disability, in violation of the federal Americans with Disabilities Act. Plaintiff's fourth claim is brought only against Defendant Marion County under Oregon's vulnerable person statute. Plaintiff alleges that he is a vulnerable person and that Defendant Marion County, through the actions of its employees, specifically, the individual Defendants, caused or permitted acts of physical abuse against Plaintiff. In response to Plaintiff's claim alleging abuse of a vulnerable person, Defendant Marion County raises the affirmative defense of justification. Defendants dispute many of Plaintiff's factual allegations and legal conclusions.

## DISCUSSION

**A. Plaintiff's Motions** *in Limine* **(Dkt. 53)**

    **1. Motion for a narrow application of FRE 611(b)**

GRANTED IN PART and DENIED IN PART. Several witnesses are identified in both Plaintiff's witness list and Defendants' witness list. In the interest of efficiently trying this case before a jury, if during Plaintiff's case-in-chief Defendants desire to go beyond the scope of Plaintiff's direct examination and conduct their own direct examination of a non-named party witness called by Plaintiff after Plaintiff's direct examination and Defendants' cross-examination conclude, Defendants will be allowed to do so with non-leading questions in lieu of recalling that witness during Defendants' case-in-chief. This ruling does not apply to the named Defendant witnesses called by Plaintiff.

    **2. Motion to exclude the playing or transcript of the 911 call**

GRANTED, with leave to request reconsideration for rebuttal or impeachment purposes. Plaintiff moves to exclude any recording or transcript of the 911 call made by the MacLeay staff member who reported the incident with Mr. Harrigan. Plaintiff alleges that the Deputies did not hear the 911 call before responding to the scene, but instead relied on the information conveyed

by the dispatcher. Because of this, Plaintiff argues that the call is not relevant to the Deputies' state of mind in responding to Mr. Harrigan, and that the call is unduly prejudicial under FRE 403. Plaintiff further argues that a recording or transcript of the 911 call would contain hearsay that is inadmissible under FRE 802.

Defendants argue that the 911 call is probative in that it provides context to the radio traffic between dispatch and the Deputies, and that it counters the Plaintiff's assertion that the MacLeay staff member called 911 solely to request medical assistance for the injured staffer. Additionally, Defendants argue that the MacLeay staff member's statements are FRE 803(1) present sense impressions, and that the dispatcher's statements are not offered for the truth of matter asserted, and thus, the call is not excludable under FRE 802.

For an out of court statement to be a present sense impression under FRE 803(1), it must be "nearly contemporaneous with the incident described and made with little chance for reflection," and the declarant must have personal knowledge of the events described. *Bemis v. Edwards*, 45 F.3d 1369, 1372-73 (9th Cir. 1995). The MacLeay staff member's statements on the 911 call describe an ongoing emergency incident that she was personally witnessing, and therefore, are admissible under the FRE 803(1) exception to the hearsay rule.

The statements on the 911 call recording are not, however, relevant to the Deputies' response to the incident at the MacLeay House. The Deputies did not hear the 911 call before responding to the scene. As such, currently, the only relevant information regarding the 911 call is the information conveyed to the Deputies by the dispatcher. *See Maples v. Vollmer*, 2013 WL 1681234, at *11 (D.N.M. Mar. 31, 2013). *Cf. United States v. Colon*, 250 F.3d 130, 137 (2d Cir. 2001) (holding that a 911 operator's knowledge from a 911 call cannot be imputed to police officers responding to the call).

PAGE 5 – OPINION AND ORDER

Nonetheless, the statements made by the MacLeay staff member on the 911 call are potentially relevant for impeachment or rebuttal purposes. For example, the statements on the 911 call would be relevant to rebut Plaintiff's assertion that Mr. Harrigan was completely secure in a locked room when the 911 call occurred, and that the 911 call was only for medical assistance for the injured staff member. Insomuch as Plaintiff makes this assertion at trial, Defendants can use the statements in the 911 call to rebut these assertions. *See Maples*, 2013 WL 1681234 at *13.

### 3. Motion to exclude evidence of prior assaults by Plaintiff Daniel Harrigan not known by the responding officers

GRANTED IN PART, DENIED IN PART. Defendants argue that assaults by Plaintiff are relevant to Plaintiff's damages as evidence of potential additional causes of Plaintiff's emotional distress. Plaintiff argues that evidence of other assaults are not probative of damages, as the incident on September 21, 2010 went above and beyond any other incident and at no other time was Mr. Harrigan shot with a bean bag gun or bitten by a police dog.

Assaults by Mr. Harrigan on others are not, by themselves, relevant to damages in this case. To be relevant, an incident would need to occur within a relevant time period and involve a response to Mr. Harrigan's assault of another that could be expected to trigger emotional distress in Mr. Harrigan. Such incidents would have a tendency to make Plaintiff's claim of ongoing emotional distress resulting from the September 21, 2010 incident more or less probable. *See Mata v. City of Farmington*, 798 F. Supp. 2d 1215, 1238 (D. N.M. 2011); *see also Halvorsen v. Baird*, 146 F.3d 680, 686 (9th Cir. 1998). Therefore, for each incident of assault by Plaintiff that Defendants wish to introduce, Defendants must lay a proper foundation that the response to that assault was such that could potentially cause emotional distress. Further, the Court finds that the relevant time period for purposes of this type of evidence is September 21, 2009 (twelve months

PAGE 6 – OPINION AND ORDER

before the date of the incident) through the date of trial. The Court has considered Plaintiff's concerns regarding the potentially prejudicial effect of such evidence. There is no indication at this point, however, that the evidence will be so prejudicial as to substantially outweigh its probative value. *See* FRE 403; *Udemba v. Nicoli*, 237 F.3d 8, 15 (1st Cir. 2001); *Mata*, 146 F.3d at 686.

4. **Motion to exclude evidence of commendations, honors, awards, or other similar events from the histories of the defendant deputies**

GRANTED. Defendants do not object to this motion.

5. **Motion to exclude testimony of witnesses or evidence not previously disclosed to Plaintiff during discovery**

GRANTED. Defendants do not object to this motion.

6. **Motion to exclude evidence regarding investigation into conduct of Plaintiff's expert witness Jack Ryan**

GRANTED. Defendants do not object to this motion.

7. **Motion to exclude expert opinions on the legal conclusion as to whether the force used by the defendant deputies was excessive or not.**

GRANTED IN PART. Experts will not be permitted to testify regarding the applicable legal standards; however, opinion testimony regarding whether the force used was reasonable under the circumstances or whether the force used was excessive will be permitted.

8. **Motion to exclude any testimony or evidence of Plaintiff's "undesirable sexual behaviors" or any similar conduct.**

GRANTED. Defendants do not object to this motion.

9. **Motion to exclude testimony or other evidence that a verdict against the defendants will have an adverse impact on mental health services or Marion County's finances.**

GRANTED. Defendants do not object to this motion.

PAGE 7 – OPINION AND ORDER

**10. Motion to exclude evidence that Plaintiff is on Medicare or Medicaid.**

GRANTED. Based on new evidence, Defendants conceded this motion at the pretrial conference.

**11. Motion to exclude evidence related to the good character of defendants Stacy Lucca, Jason Bernards, Jeffrey Strutrud, T. Shane Burnham**

GRANTED IN PART. No evidence shall be elicited or received in violation of FRE 404 or FRE 608.

**12. Motion to exclude evidence or testimony of any witness expressing the opinion that defendants were not discriminatory**

GRANTED IN PART, DENIED IN PART. No evidence shall be elicited or received in violation of FRE 404 or FRE 608. To the extent, however, that Plaintiff contends that Defendants had a custom or practice of discriminatory conduct, Defendants may offer evidence to rebut that contention in the form of fact testimony by lay witnesses, or in the form of properly disclosed expert opinion; lay opinion testimony on this subject shall not be permitted.

**13. Motion to exclude evidence of defendants' compliance with the Americans with Disabilities Act or the Rehabilitation Act in instances other than the incident at issue in this case**

GRANTED IN PART, DENIED IN PART. No evidence shall be elicited or received in violation of FRE 404 or FRE 608. To the extent, however, that Plaintiff contends that Defendants had a custom or practice of violating the Americans with Disabilities Act, Defendants may offer evidence to rebut that contention in the form of fact testimony by lay witnesses, or in the form of properly disclosed expert opinion; lay opinion testimony on this subject shall not be permitted.

**14. Motion to exclude evidence suggesting that Plaintiff's autism or developmental delay is such that it is likely that someone with those conditions would act aggressively**

GRANTED. Defendants do not object to this motion.

15. **Motion to prohibit an expert witness from testifying beyond the four corners of the report.**

GRANTED IN PART, DENIED IN PART. All expert witnesses shall be confined on direct examination to the material substance of their report in order to prevent unfair surprise.

16. **Motion to exclude testimony about the health problems of the police dog Renzo**

GRANTED. Defendants do not object to this motion.

17. **Motion to require law enforcement officers called as witness to appear in civilian clothing**

DENIED, except that the deputies may not wear their duty belts or sidearms. *See Zaken v. Kelley*, 370 Fed. App'x 982 (11th Cir. 2010); *Jones v. Ralls*, 187 F.3d 848 (8th Cir. 1999); *Maus v. Greening*, 2012 WL 4903326 (E.D. Wis. Oct. 15, 2012).

18. **Motion to exclude witnesses pursuant to FRE 615**

GRANTED. Defendants do not object to this motion. Counsel for Defendant Marion County may designate a natural person as that Defendant's representative during trial. In addition, this exclusion does not apply to any party's outside expert witnesses.

B. **Defendants' Motions** *in Limine* **(Dkt. 74)**

1. **Motion to exclude Mr. Randy and Ms. Carole Harrigan's testimony on causation**

GRANTED IN PART, DENIED IN PART. Randy and Carole Harrigan may testify as to what they observed of their son's behavior and communication before and after the events at issue in this case, as well as the mental, emotional, or physical conditions of their son that they observed. Additionally, they may testify as to opinions drawn from these observations, as proper lay opinion testimony, including that Plaintiff suffered emotional distress and that various behavioral changes indicate emotional distress. *See, e.g., Esteem v. City of Pasadena*, 2007 WL 4270360, at *21 (C.D. Cal. Sept. 11, 2007) ("Ms. Simmerman can permissibly testify to her observations of her children's behavior. She can also testify to opinions drawn from these

PAGE 9 – OPINION AND ORDER

observations."). Lay opinion testimony must be rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. Parents are able to perceive the behavior of their children, and lay opinion testimony "'traditionally has been received as to the mental, emotional or physical condition of a person observed by the witness.'" *Id.* at *21, n.40 (quoting 29 Charles Wright, *et al.*, *Federal Prac. & Proc.* § 6225 (2007 online ed.). Further, Courts have recognized that "evidence of the emotional distress experienced by a child may be received through the lay opinions of the child's parent." *Esteem*, 2007 WL 4270360, at *21 (allowing parent to testify as to emotional distress caused by incident with police officers); *see also Leonard v. Compton*, 2005 WL 1460165, at *11 (N.D. Ohio June 17, 2005) (allowing parent to testify as to change in eleven-month old child's behavior and emotional well-being after incident at issue). The Harrigans may not, however, testify that the incident on September 21, 2010, was the cause of their son's emotional distress.

### 2. Motion to exclude expert testimony of Genevieve Athens

DENIED. Defendants object to the designation of Ms. Genevieve Athens as an expert, both based on her qualifications under FRE 702 and because she did not personally examine Daniel Harrigan and will not testify as to what attributes of autism Daniel Harrigan exhibits. The Court finds that Ms. Athens is qualified to testify generally regarding autism and where Daniel Harrigan falls within the autism spectrum. Ms. Athens served as the Executive Director of the Autism Society of Oregon for eight years and in that role she was the lead information and referral source for the Society and managed all of its conferences, seminars, and workshops. Ms. Athens has also provided training to many agencies (including law enforcement and other public agencies) and companies, and presented at numerous conferences, workshops, and

seminars. She has her own business as an autism lifespan coach and is a monthly columnist for an autism-specific magazine.

The fact that Ms. Athens did not examine Daniel Harrigan does not preclude her testimony. Autism is a complicated disorder that is not within the purview of the average juror. Ms. Athens' testimony regarding the general aspects of the disorder may assist jurors in understanding the disorder.

> 3. **Motion to exclude evidence that Marion County did not have training specific to autism and post-event evidence of attempts to get Marion County to adopt such training**

DENIED. Defendants argue that evidence that Marion County did not have training specific to autism should be excluded because Plaintiff has not laid the foundation that such training is standard for police agencies, and that evidence of efforts by Ms. Harrigan or Ms. Athens to have Marion County institute additional autism awareness and understanding measures should similarly be excluded. Defendants cite to no authority that the training at issue must be standard for police agencies to be admissible, nor that subsequent attempts to encourage additional training are inadmissible.

The United States Supreme Court has established that a municipality's alleged inadequacy in training police officers "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1986). The Supreme Court further explained that:

> The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more

PAGE 11 – OPINION AND ORDER

> or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id*. at 390 (footnote omitted).

Deliberate indifference from a municipality's training program may be found where a program "does not prevent constitutional violations" and the municipality continue to adhere "to an approach that they know or should know has failed to prevent tortious conduct by employees" or where there is a "pattern of tortious conduct by inadequately trained employees [that] may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 407-8 (1997).

"A plaintiff also might succeed in proving a failure-to-train claim without showing a pattern of constitutional violations where 'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (*quoting Brown*, 520 U.S. at 409). As explained by the *Brown* Court:

> The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.

*Brown*, 520 U.S. at 409.

Thus, evidence of training, or lack of training, is relevant where a plaintiff claims a pattern of tortious conduct by inadequately trained officers, a training program that fails to prevent constitutional violations and the employer knows or should know the training program has failed to prevent tortious conduct, or that a violation of federal rights may be a highly predicable consequence of the training program. Based on Plaintiff's Second Amended Complaint and trial submissions, they are making such arguments and evidence of Marion County's training, or lack thereof, relating to persons with autism is relevant and admissible.

With regard to evidence of Plaintiff's (or others') attempts to get Marion County to provide such training, it is relevant and admissible. Post-event evidence that there were no reprimands, discharges, admissions of error, or changes to policies is admissible evidence. *Henry v. Cnty. of Shasta*, 132 F.3d 5129, 519-20 (9th Cir. 1997), *as amended by* 137 F.3d 1372 (9th Cir. 1998) (noting that "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry.").

4. **Motion to allow Defendants to video-tape Plaintiff**

GRANTED with conditions as discussed on the record.

5. **Motion to exclude evidence of a "ratification" theory under 42 U.S.C. § 1983**

DENIED. Defendants argue that Plaintiff's pleading of a municipal liability claim against Marion County did not include a ratification theory of liability, and that Defendant's did not find out about the ratification theory until a week before Plaintiff's trial documents were due to the Court. Defendants allege that they will suffer serious prejudice if Plaintiff is allowed to proceed on the ratification theory because they would have prepared differently for trial if they had known about this theory earlier, including that they would have engaged an additional expert.

Plaintiff argues that the facts alleged in the Second Amended Complaint were enough to put Defendants on notice of a ratification theory claim

In Paragraph 43 of the Second Amended Complaint in this action (Dkt. 19), Plaintiff alleges:

> It was the policy and/or custom of Marion County to inadequately supervise and train its deputies, including the defendant deputies, thereby failing to adequately discourage further constitutional violations on the part of its deputies. Marion County did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

Ratification by a final decision maker is one means of proving municipal policy. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Plaintiff's ratification theory is consistent with the allegations in Paragraph 43 of the Second Amendment Complaint, which alleges a "policy and/or custom," particularly in light of the notice pleading standard of Federal Rule of Civil Procedure 8(a). Furthermore, a ratification theory is consistent with the discovery pursued by Plaintiff over the course of this litigation.

Defendants do not provide any evidence of responses to interrogatories, responses to requests for admission, or other discovery that is inconsistent with Plaintiff's ratification theory of the case or that shows that Defendants have suffered unfair prejudice. Because Plaintiff's ratification theory is consistent with the Second Amended Complaint and Plaintiff's discovery, Defendants have not provided evidence that Plaintiff's previously foreclosed arguing a ratification theory, and Defendants have not shown any unfair prejudice, evidence regarding Plaintiff's ratification theory shall not be excluded.

**6. Motion to exclude evidence of a supervisor liability claim under 42 U.S.C. §1983**

DENIED. Defendants also argue that Plaintiff did not plead a supervisor liability claim, and therefore, should be precluded from pursuing this claim at trial. Defendants allege that they

did not engage in discovery or retain an expert on the issue of supervisory liability, and that it is too late for Plaintiff to add new claims. Plaintiff argues that supervisory liability is not a new separate claim, but rather a theory under which a particular defendant may have caused the alleged Fourth Amendment violation that was pled in the Second Amended Complaint.

In Paragraph 32 of the Second Amended Complaint, Plaintiff alleges that Defendant Burnham (along with the other individually named defendants) "violated Harrigan's right not to be subjected to excessive physical force as guaranteed by the Fourth Amendment to the United States Constitution, which caused his resulting injuries." Plaintiff's counsel has also filed a declaration stating that she found a record of a conversation with Defendants' counsel on November 9, 2012, where they discussed the claim against Sergeant Burnham and the theory of supervisory liability that Plaintiff would pursue against him. Dkt. 94. Additionally, Plaintiff alleges that in Sergeant Burnham's deposition, he stated that he approved the operation at issue in this case and that the operation would not have gone ahead without his approval. Plaintiff argues that the allegations in the Second Amended Complaint, the conversation with counsel about the supervisory liability theory, and the course of Plaintiff's discovery, are enough to have put Defendants on notice of the supervisory liability theory, in light of the notice pleading standard of Federal Rule of Civil Procedure 8(a).

As with Defendants' Motion Number Five, Defendants have not provided any evidence that Plaintiff foreclosed a supervisory liability theory. Therefore, because Plaintiff's supervisory liability theory is consistent with allegations in the Second Amended Complaint and the course of discovery, and because Defendants have not demonstrated that they will suffer unfair prejudice, evidence regarding Plaintiff's supervisory liability theory shall not be excluded.

**7.  Motion to require Plaintiff's counsel to refer to Plaintiff as "Mr. Harrigan"**

GRANTED. Plaintiff's counsel may also refer to Plaintiff as "Daniel Harrigan."

PAGE 15 – OPINION AND ORDER

**C. Defendants' Objections to Plaintiff's Trial Exhibits**

    **1. Pre-Admitted Exhibits**

The following Plaintiff's exhibits are pre-admitted without objection: Plaintiff's Exhibit Nos. 1, 3-15, 17-26, 28-38, 40-50, 52-55A. *See* Dkts. 62 and 82.

    **2. Additional Pre-Admitted Exhibits**

The following Plaintiff's exhibits are pre-admitted over Defendants' objections: Plaintiff's Exhibit Nos. 16 and 39.

    **3. Rulings on Defendants' Objections to Plaintiff's Exhibits (Dkt. 82)**

    Ex. 2    Ruling reserved. Plaintiff may attempt to offer additional foundational evidence to show that Defendants were aware of this document.

    Ex. 16    Overruled.

    Ex. 27    Ruling reserved. Plaintiff may attempt to offer additional foundation evidence to show that Defendants were aware of this document.

    Ex. 39    Overruled.

    Ex. 51    Ruling reserved. Plaintiff may attempt to offer additional foundational evidence.

    Ex. 54A    Objection withdrawn.

    Ex. 55A    Objection withdrawn.

    Ex. 56    Ruling reserved. This document does not appear to contain inadmissible hearsay, but its relevance has not yet been shown.

    Ex. 57    Ruling reserved. Plaintiff may attempt to offer additional foundational evidence.

    Ex. 58    Ruling reserved. Plaintiff may attempt to offer additional foundation evidence to show that Defendants were aware of this document.

Ex. 59    Ruling reserved. Plaintiff may attempt to offer additional foundation evidence to show that this document qualifies as a business record.

Ex. 60    Ruling reserved.

### D. Plaintiff's Objections to Defendants' Trial Exhibits

#### 1. Pre-Admitted Exhibits

The following Defendants' Exhibits are pre-admitted: Defendants' Exhibit Nos. 202, 204, 208, 216. *See* Dkts. 71 and 86.

#### 2. Additional Pre-Admitted Exhibits

The following Defendants' exhibits are pre-admitted over Plaintiff's objections: None.

#### 3. Rulings on Plaintiff's Objections to Defendants' Trial Exhibits (Dkt. 86)

Ex. 201    Ruling reserved to determine relevance. *See* Plaintiff's Motion *in Limine* No. 2.

Ex. 203    Ruling reserved to determine relevance. *See* Plaintiff's Motion *in Limine* No. 2.

Ex. 205    Ruling reserved to determine relevance. *See* Defendants' Motion *in Limine* No. 4. Also, the Court does not have Ex. 205 (video-tape).

Ex. 206    Ruling reserved. Plaintiff may attempt to offer additional foundational evidence.

Ex. 207    Ruling reserved to determine relevance. *See* Plaintiff's Motion *in Limine* No. 3.

Ex. 209    Ruling reserved to determine relevance.

Ex. 210    Ruling reserved to determine relevance.

Ex. 211    Ruling reserved to determine relevance.

Ex. 212    Ruling reserved to determine relevance.

  Ex. 213  Ruling reserved to determine relevance.

  Ex. 214  Ruling reserved to determine relevance.

  Ex. 215  Ruling reserved to determine relevance.

## E. Defendants' Objections to Plaintiff's Lay Witnesses (Dkt. 79)

Defendants' objection that Plaintiff provide addresses for their lay witnesses is SUSTAINED.

### 1. Defendants' objections to certain testimony by Carole Harrigan

Objection to Ms. Harrigan's testimony regarding her understanding of what happened on September 21, 2010 is RESERVED. The testimony is not offered for the truth of the matter asserted, but to explain the effect on Ms. Harrigan and her subsequent actions. The relevance of that evidence, however, is not clear.

Objection to Ms. Harrigan's testimony regarding her attempts to have deputies trained in autism is OVERRULED (see the Court's ruling on Defendants Motion *in Limine* No. 3)

Objection to Ms. Harrigan's testimony regarding her opinion on causation is SUSTAINED IN PART, OVERRULED IN PART (see the Court's ruling on Defendants Motion *in Limine* No. 1).

### 2. Defendants' objections to certain testimony by Randy Harrigan

Objection to Mr. Harrigan's testimony regarding his perception of what happened on September 21, 2010 is RESERVED. The testimony is not offered for the truth of the matter asserted, but to explain the effect on Mr. Randy Harrigan and his subsequent actions. The relevance of that evidence, however, is not clear.

Objection to Mr. Harrigan's testimony regarding his opinion on causation is OVERRULED (see the Court's ruling on Defendants Motion *in Limine* No. 1).

    3. **Objections to certain testimony by Genevieve Athens**

SUSTAINED as to Ms. Athens' testimony regarding her understanding of the incident on September 21, 2010. The remainder of the objection is OVERRULED (see the Court's ruling on Defendants' Motion *in Limine* No. 2).

**F. Defendants' Objections to Plaintiff's Expert Witnesses (Dkt. 81)**

OVERRULED (see the Court's ruling on Defendants' Motion *in Limine* No. 2).

**G. Plaintiff's Objections to Defendants' Lay Witnesses (Dkt. 87)**

Plaintiff's objection that Defendants' lay witness statements fail to comply with the Court's Pretrial Management Order is SUSTAINED. Defendants are ordered to provide more detailed and substantive witness statements as required by the Court and discussed during the pretrial conference.

Plaintiff objects to Defendants calling witnesses Damon Frutos, Alex Bancroft, Scott Seaton, and Kris Williams. Defendants withdrew these witnesses at the pretrial conference.

## CONCLUSION

The parties' motions *in limine* and other evidentiary matters raised in Dkts. 53, 74, 79, 81, 82, 86, and 87 are GRANTED IN PART and DENIED IN PART as set forth in this Opinion and Order.

    **IT IS SO ORDERED**.

DATED this 18th day of September 2013.

                                                 /s/ Michael H. Simon
                                                 Michael H. Simon
                                                 United States District Judge